UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THEREISTA F. STEPHENS,
          Plaintiff,

v.                   6:08-CV-0400
                   (GHL)
MICHAEL J. ASTRUE, Commissioner of Social Security,
            Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF PETER W. ANTONOWICZ<br>Counsel for Plaintiff<br>1300 Floyd Avenue<br>Rome, NY 13440-4600 | PETER W. ANTONOWICZ, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel - Region II<br>Counsel for Defendant<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | KAREN G. FISZER, ESQ.<br>Special Assistant U.S. Attorney |

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER[1]

I. **BACKGROUND**

  A. **Procedural History**

Plaintiff initially applied for disability insurance benefits ("DIB") and supplemental

security income ("SSI") on September 15, 2001. Administrative Transcript ("T") at 86. Her

application was denied by an Administrative Law Judge on March 25, 2004. *See id.* The

Appeals Council denied review of that decision. *See id.* No further appeal was pursued. *See id.*;

---

[1] The parties consented, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules
of Civil Procedure, to the exercise of jurisdiction over this matter by a United States Magistrate
Judge. Dkt. No. 14.

Dkt. No. 17 at 3.

Plaintiff filed another application for DIB on October 5, 2004, alleging that she had been disabled since February 8, 2000. T at 123-27. The application was denied on May 12, 2005. T at 100-03. An administrative hearing was held on May 30, 2007 before ALJ Elizabeth W. Koennecke. T at 748-78. On August 25, 2007, the ALJ issued a decision finding that Plaintiff was not disabled from the date of the previous ALJ's decision, March 25, 2004, through the date last insured, September 30, 2005.[2] T at 86-98.

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 19, 2008. T at 5-8. Plaintiff commenced this action on April 11, 2008. Dkt. No. 1.

**B.     The Contentions**

Plaintiff makes the following claims:[3]

1. The ALJ improperly "impos[ed]" her opinions into the findings of fact. Dkt. No. 17 at 7-9.

2. The ALJ failed to adequately analyze the effects of Plaintiff's obesity. Dkt. No. 17 at 9-16.

---

[2] The ALJ noted that the principle of *res judicata* applied to the period of February 8, 2000 through March 25, 2004. T at 87.

[3] Plaintiff's brief does not fully comply with General Order 18. *See* N.D.N.Y. G.O. 18. General Order 18 requires that the argument section in a social security brief be divided into sections separately treating each issue and that each contention be supported by, *inter alia*, citations to statutes, regulations, and cases supporting plaintiff's position. *Id.* at pp. 1-2. Here, several sections in the brief each contain multiple cursory contentions. Moreover, although Plaintiff's counsel cited the standard of review and some law regarding obesity, counsel failed to cite supporting statutes, regulations, or cases for the remaining issues.

     3. The ALJ "misrepresented the nature of Plaintiff's lumbar spine condition." Dkt. No. 17 at 16.

     4. The ALJ failed to fully develop the record. Dkt. No. 17 at 16-17.

     5. The ALJ failed to consider Plaintiff's non-severe impairments. Dkt. No. 17 at 17.

     6. The ALJ erred in evaluating the severity of several impairments. Dkt. No. 17 at 17-18.

     7. The ALJ erred by failing to obtain the testimony of a vocational expert. Dkt. No. 17 at 17-18.

Defendant disagrees, and argues that the decision should be affirmed. Dkt. No. 19.

## II.   APPLICABLE LAW

### A.   Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520. "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its

weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III.   THE PLAINTIFF

At the time of the administrative hearing held on May 30, 2007, Plaintiff was thirty-eight years old.  T at 752.  She completed high school and one year of college.  T at 752-53.  Plaintiff previously worked as, *inter alia*, a direct caregiver.  T at 172.  Plaintiff alleges disability due to the condition of her heart, high blood pressure, seizures, manic depression, and knee surgery.  T at 137.

### IV.   THE ALJ'S DECISION

The ALJ examined the issue of disability with regard to the period of March 26, 2004 through September 30, 2005 and made the following findings:

1. Plaintiff had not engaged in substantial gainful activity.  T at 89.

2. Plaintiff's seizure disorder was the only severe impairment.  T at 89.

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  T at 93.

4. Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: avoid heights and hazards.  T at 93-96.

5. Plaintiff's past relevant work as a direct caregiver did not require the performance of work-related activities precluded by her RFC.  T at 96.

6. Even if Plaintiff was unable to perform her past relevant work, based on Plaintiff's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines (the "Grid"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform; therefore Plaintiff was not disabled.  T at 96-97.

## V.  DISCUSSION

### A.  Severity

Plaintiff argues that the ALJ erred by finding that "her psychiatric condition, lumbar spine condition and her right knee condition" were not severe.[4]  Dkt. No. 17 at 17.  Defendant argues that the ALJ correctly found that these impairments were not severe.  Dkt. No. 19 at 17-20.

Step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.[5]  An impairment is severe if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe.  20 C.F.R. § 416.920(c).  The severity analysis does no more than "screen out *de minimis* claims."  If the disability claim rises above the *de minimis* level, then further analysis is warranted.  *Dixon v.*

---

[4] To the extent that Plaintiff also argues that the ALJ "undermine[d]" the severity of Plaintiff's medically determinable impairments by "impos[ing]" her opinions, Dkt. No. 17 at 8-9, this argument is unavailing.  As will be decided herein, the ALJ's determination that certain impairments were not severe is supported by substantial evidence.

[5] The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." 20 C.F.R. § 404.1521(b).  Basic work activities which are relevant for evaluating the severity of a physical impairment include the physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  20 C.F.R. § 404.1521(b); *see also Pickering v. Chater*, 951 F. Supp. 418, 424 (S.D.N.Y. 1996).

*Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

### 1. Back

The ALJ discussed the condition of Plaintiff's back in some detail before concluding that it was not a severe impairment. T at 89-90. The ALJ noted the following:

In March of 2003, Plaintiff reported that she shoveled snow. T at 640. Later that year in December, Plaintiff was involved in a motor vehicle accident. T at 330. An MRI of the lumbar spine showed disc bulging at L3-4 and L4-5. T at 443.

On January 26, 2005, Plaintiff underwent a discogram and lateral discectomy at L3-4 and L4-5. T at 647-48. The surgery was performed by Gregory B. Shankman, M.D. *Id.* On February 4, 2005, Dr. Shankman noted that Plaintiff's "wounds healed without any problems and there is no evidence of infection." T at 699. Plaintiff was advised to continue undergoing physical therapy. *Id.* The ALJ noted that Plaintiff last saw Dr. Shankman in February of 2005 despite her testimony at the hearing that she still experienced back pain. T at 90, 762.

On November 1, 2006, Jameel Arastu, M.D., an examining neurologist, noted that Plaintiff ambulated easily and independently; her gait and stance were unremarkable; her back was straight; her strength and tone were normal; her extremities were unremarkable; and her sensory examination was normal. T at 738.

In light of the foregoing, the ALJ's finding that the condition of Plaintiff's back was not a severe impairment is supported by substantial evidence. Therefore the ALJ's decision in this regard is affirmed.[6]

---

[6] Plaintiff also argues that the ALJ "misrepresented the nature of [her] lumbar spine condition." Dkt. No. 17 at 16. Plaintiff fails to explain how the ALJ misrepresented the nature

### 2. Right Knee

The ALJ discussed the condition of Plaintiff's right knee in some detail before concluding that it was not a severe impairment. T at 90. The ALJ noted the following:

An MRI of Plaintiff's right knee showed a meniscal tear. T at 440. On March 24, 2004, Plaintiff underwent surgery for this condition. T at 548.

On June 1, 2004, Dr. Shankman noted that Plaintiff showed an intact range-of-motion from 0-to-135 degrees, intact motor and sensory function with good sensation to light touch and pin prick, no synovial thickening, no tenderness along the medial and lateral joint line, and no effusion. T at 702. She was "able to ambulate on the knee bearing full weight." *Id.*

Similarly, on January 10, 2005, Dr. Shankman found that Plaintiff had no motor weakness and good strength in her muscle groups; and was able to ambulate on her knee bearing full weight. T at 700.

On November 1, 2006, Dr. Arastu found that Plaintiff ambulated easily; her extremities were unremarkable; and her gait and stance were unremarkable. T at 738. Similarly, on April 23, 2007, Dr. Arastu noted that Plaintiff ambulated easily and her gait and stance were unremarkable. T at 731.

Jamal Emad, M.D., a consultative examiner, opined that Plaintiff had difficulty ambulating, T at 633-34, but the ALJ assigned no weight to this opinion. T at 94. The ALJ explained that Dr. Emad's opinion as to physical limitations was unsupported and was rendered by an examining physician. The ALJ committed no error in this regard because Dr. Emad was

---

of this condition. In any event, the ALJ's determination that the condition of Plaintiff's back was not a severe impairment is supported by substantial evidence.

9

not a treating physician whose opinion must be afforded controlling weight. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

In sum, the ALJ's finding that the condition of Plaintiff's right knee was not a severe impairment is supported by substantial evidence. Therefore, the decision in this regard is affirmed.[7]

### 3. Bipolar disorder

The ALJ discussed Plaintiff's bipolar disorder in some detail before concluding that it was not a severe impairment. T at 90-91.

The ALJ discussed the December 21, 2004 report prepared by Dr. Emad. The ALJ noted that Dr. Emad opined that Plaintiff "had mood swings and agoraphobia which prevented her from going out and meeting people, and concluded that the claimant needed psychiatric counseling." T at 91; *see* T at 633. However, the ALJ assigned "minimal weight" to Dr. Emad's opinion as to mental limitations because "Dr. Emad evaluated the claimant on one brief occasion[, he] reviewed an incomplete record; [and] his clinical findings do not support his opinion." T at 91. The ALJ was permitted to assign less than controlling weight to Dr. Emad's opinion because Dr. Emad was not a treating physician. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ then considered the four broad functional areas, which are used when evaluating the severity of a mental disorder, set forth in section 12.00(C) of the Listing of Impairments. T at 91.

---

[7] To the extent that Plaintiff argues that the ALJ "misrepresented" the condition of Plaintiff's right knee, this claim is unavailing. Dkt. No. 17 at 16. The ALJ's finding that the condition of Plaintiff's right knee was not a severe impairment is supported by substantial evidence.

The ALJ examined the first area, activities of daily living,[8] and concluded that Plaintiff had no limitations in this domain. T at 91. The ALJ noted that Plaintiff reported in 2004 that she was planning her wedding; was capable of "picking up" her apartment, preparing food, doing dishes and laundry, and shopping; and had no problems with personal care. T at 91, 149-56, 594. The ALJ also noted that during the hearing, Plaintiff testified that she had no problems with personal care aside from her hair care due to financial reasons. T at 91, 768-69. The ALJ further noted that in 2006, Plaintiff "engaged in work activities." T at 91. Plaintiff testified that she worked part-time at a grocery store, but stopped because she experienced a seizure while working. T at 759.

The ALJ examined the second domain, social functioning, and concluded that Plaintiff had no more than mild difficulties in this domain.[9] T at 92. The ALJ noted that Plaintiff reported having friends, visiting with family members, and no problems with persons in authority. T at 92, 150, 154-55. He also noted that she "attended family functions, had boyfriends, planned her wedding, and got married." T at 92, 591-608. He further noted that Plaintiff testified that she "reported being ok with clients and being ok with a few people." T at 92, 765-66. Further, as pointed out by the ALJ, she also testified that she "can deal" with the

---

[8] Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(1).

[9] Social functioning refers to the capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(2). Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. *Id*.

11

"mental stuff." T at 91, 778.

The ALJ examined the third domain, concentration, persistence, or pace,[10] and concluded that there is no evidence of a limitation in this domain. T at 92. The ALJ pointed out that Plaintiff reported being able to pay bills, use a checkbook and money orders, watch television, and work on crossword puzzles. T at 92, 153. She also reported being capable of following spoken and written instructions, and that her hobbies and interests included crocheting. T at 153, 155.

Lastly, the ALJ examined the domain of episodes of decompensation.[11] T at 92. The ALJ found that Plaintiff had experienced no episodes of decompensation. *Id.*

In light of the foregoing, the ALJ's finding that Plaintiff's bipolar disorder was not a severe impairment is supported by substantial evidence. Therefore, the matter in this regard is affirmed.

**4.     Obesity**

Plaintiff argues that the ALJ erred by failing to find that her obesity was a severe impairment.[12] Dkt. No. 17 at 13. Defendant argues that the ALJ made no error in this regard.

---

[10] Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(3).

[11] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(4).

[12] Plaintiff also summarily claims that the ALJ failed to address Plaintiff's obesity "as a medical impairment in its own right." Dkt. No. 17 at 12. However, the ALJ specifically discussed Plaintiff's obesity in the section of her decision in which the medically determinable impairments are identified. T at 90.

Dkt. No. 19 at 15-20.

"Obesity is not in and of itself a disability[.]" *Cruz v. Barnhart*, No. 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing S.S.R. 02-1p, 2000 WL 628049 (S.S.A. 2002)). Nevertheless, S.S.R. 02-1p provides that " obesity [is] a medically determinable impairment and [adjudicators are] remind[ed] to consider its effects when evaluating disability." *Id.* at *1. Therefore, adjudicators must consider the effects of obesity "not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

However, an ALJ is not obligated to single out a claimant's obesity for discussion in all cases. *Cruz*, 2006 WL 1228581, at *9 (citing *Guadalupe v. Barnhart*, No. 04 CV 7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)). "Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe*, 2005 WL 2033380, at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) & *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Stemple v. Astrue*, 2007 WL 601566, at *10 (D. Md. Feb. 26, 2007) (noting that "some courts have found harmless error in certain cases where the ALJ fails to discuss a claimant's obesity") (citing, *inter alia*, *Cruz*, 2006 WL 1228581).

In this case, the ALJ specifically discussed Plaintiff's obesity. T at 90. The ALJ noted Plaintiff's height, 5 foot, 10 inches tall, and her weight, which ranged from 316 pounds to 389 pounds. *Id.* The ALJ further pointed out that following knee surgery, Plaintiff was capable of

13

ambulating on her knee bearing full weight, ambulated easily and independently, and had an unremarkable gait and stance. T at 90, 700. The ALJ also noted that Plaintiff reported that she shoveled snow in March of 2003. T at 90, 640.

Moreover, while Dr. Emad opined that Plaintiff needed to lose weight, T at 633, the ALJ explained that Dr. Emad's opinion as to Plaintiff's physical limitations was unsupported. T at 94. Further, Dr. Emad saw Plaintiff on only one occasion. The ALJ therefore assigned no weight to this opinion, which he was permitted to do based on Dr. Emad's status as an examining physician. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Further, the regulations place the burden of establishing disability on a claimant. 20 C.F.R. § 404.1512(a), (c). Here, Plaintiff points to no evidence indicating that her obesity was a severe impairment. T at 137. Moreover, she did not claim that obesity was a disabling impairment.

In light of the foregoing, the ALJ's finding in this regard is supported by substantial evidence. The decision in this regard is affirmed.

### B. Listed Impairments

Plaintiff summarily argues that the ALJ failed to "consider the effects of obesity . . . when assessing the Listings." Dkt. No. 17 at 15. Defendant argues that the ALJ properly assessed the effects of Plaintiff's obesity. Dkt. No. 19 at 15-20.

A claimant is automatically entitled to benefits if his or her impairment(s) meets criteria set forth in "the Listings." 20 C.F.R. § 404.1520(d). The burden is on the plaintiff to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July

27, 1998). In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id*.

The ALJ considered Listing 11.02 (epilepsy) and concluded that the requirements of this listed impairment were not met. T at 93. The ALJ did not specifically discuss Plaintiff's obesity. However, in making this determination, the ALJ relied on progress notes made by Mary Anne Whelan, M.D., Plaintiff's treating neurologist. T at 93. In those progress notes, Dr. Whelan consistently discussed Plaintiff's weight. *See* T at 635-36. Accordingly, obesity is understood to have factored into the ALJ's decision, since the ALJ relied on Dr. Whelan's findings, which referenced Plaintiff's weight. *See Guadalupe*, 2005 WL 2033380, at *6.

Moreover, Plaintiff fails to suggest what specific effects of obesity the ALJ failed to consider during the step three analysis. Further, as noted, Plaintiff did not cite obesity as a disabling impairment. *See* T at 137.

In light of the foregoing, the ALJ committed no error. Accordingly, the decision in this regard is affirmed.[13]

### C.    Development of the Record

---

[13] Plaintiff also argues that the ALJ failed to discuss "the effects of obesity upon [her] psychiatric conditions." Dkt. No. 17 at 15. Plaintiff fails to identify the specific effects and the specific psychiatric conditions to which she refers. To the extent that Plaintiff is referring to her bipolar disorder, the ALJ specifically discussed evidence in which Plaintiff's obesity was referenced when evaluating this disorder. For instance, the ALJ cited the report by Dr. Emad, who discussed Plaintiff's obesity but made no specific finding that obesity had an effect on Plaintiff's bipolar disorder. *See* T at 91, 631-34. In light of the foregoing, obesity is understood to have factored into the ALJ's analysis of her bipolar disorder. *See Guadalupe*, 2005 WL 2033380, at *6.

Plaintiff argues that the ALJ failed to develop the record in light of the lack of "consultative examination reports with regard to any of the plaintiff's orthopedic ailments (back and right knee), or her severe seizure disorder." Dkt. No. 17 at 16-17. Defendant argues that the ALJ properly developed the record. Dkt. No. 19 at 20-21.

If an ALJ has insufficient medical evidence about the claimant's impairment to determine whether the claimant is disabled, a consultative examination may be ordered, at the SSA's expense. 20 C.F.R. § 404.1517. If a claimant fails or refuses to take part in the consultative examination and has no good reason for the failure or refusal, a finding of not disabled may be rendered. 20 C.F.R. § 404.1518(a). Examples of "good reasons" include--

(1) Illness on the date of the scheduled examination or test;

(2) Not receiving timely notice of the scheduled examination or test, or receiving no notice at all;

(3) Being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place of the examination or test, or;

(4) Having had death or serious illness occur in [the claimant's] immediate family.

*Id.* at § 404.1518(b).

In this case, the Agency arranged for Plaintiff to undergo an orthopedic consultative examination on May 2, 2005. T at 163-64. However, Plaintiff did not attend the examination. T at 163.

Plaintiff fails to acknowledge that an examination was arranged and fails to argue that she had a good reason for her failure or refusal to attend. Accordingly, Plaintiff's claim that the ALJ failed to develop the record in light of the lack of consultative orthopedic examination reports is

16

unavailing.

Regarding Plaintiff's claim that the ALJ failed to develop the record in light of the lack of consultative examination reports regarding her seizure disorder, the regulations provide, "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we **may** ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 404.1517 (emphasis added). In this case, the record contains, *inter alia*, detailed progress notes from Dr. Whelan, Plaintiff's treating neurologist. *See* T at 635-46. There is no indication that this evidence is insufficient nor does Plaintiff make this argument. Accordingly, Plaintiff's claim is unavailing.

### D. Residual Functional Capacity

Plaintiff argues that the ALJ failed to discuss the effects of her obesity when determining Plaintiff's RFC. Dkt. No. 17 at 13, 15. Plaintiff also argues that the ALJ failed to consider her non-severe impairments. *Id.* at 17. Defendant argues that the ALJ properly determined Plaintiff's RFC. Dkt. No. 19 at 15-20.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(Hurd, D.J.).

Here, the ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: avoid heights and hazards." T at 93. In making this determination, the ALJ relied on, *inter alia*, evidence from Dr. Whelan

and Dr. Shankman in which Plaintiff's weight is discussed.  T at 93-96, 636, 639, 701.  Accordingly, obesity is understood to have factored into the ALJ's decision.  *See Guadalupe*, 2005 WL 2033380, at *6.  The Court also notes that Plaintiff again fails to suggest what specific evidence regarding her obesity the ALJ failed to consider.  Moreover, Plaintiff never cited obesity as a disabling impairment.  T at 137.  Thus, this claim is unpersuasive.

Plaintiff also summarily claims that the ALJ "made no effort" to consider her non-severe impairments while assessing her RFC.  Dkt. No. 17 at 17.  Plaintiff is presumably referring to her back, obesity, right knee, and bipolar disorder.  However, the ALJ specifically stated that in determining the RFC, she "considered all symptoms" and the "opinion evidence."  T at 93.  Moreover, the ALJ discussed some medical evidence relating to these conditions, as well as Plaintiff's testimony when determining the RFC.  T at 93-96.  In light of the foregoing, this claim is unavailing.  The ALJ's decision in this regard is affirmed.[14]

### E.   Vocational Expert

Plaintiff asserts that the ALJ erred by failing to consult a vocational expert.  Dkt. No. 17 at 17.  Defendant argues that the ALJ was not required to consult a vocational expert.  Dkt. No.

---

[14] To the extent that Plaintiff argues that the ALJ "undermine[d]" her credibility by "impos[ing]" her opinions, Dkt. No. 17 at 9, the ALJ is duty-bound to evaluate a claimant's credibility.  Indeed, "[i]t is the function of the Secretary . . . to appraise the credibility of witnesses, including the claimant." *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quotation omitted).  Moreover, an ALJ is required to "set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quotation omitted).  Therefore, the ALJ was required to set forth specific reasons supporting the credibility determination.  Accordingly, the ALJ committed no error by stating her specific reasons.  She also properly used common sense to interpret the evidence in the record.  *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) (finding no error in ALJ's reasoning that was based on matters "within the common knowledge and experience of ordinary men.").

19 at 21-25.

If a claimant's nonexertional limitations present significant limitations, application of the grids is inappropriate. *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986); *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-230 (N.D.N.Y. 1998). "Significantly diminish" refers to "the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Bapp*, 802 F.2d at 606.

Here the ALJ considered Plaintiff's RFC, age, education, and work experience in conjunction with the Grids. T at 96-97. The ALJ noted that the avoidance of hazards and heights "had little or no effect on the occupational base of unskilled work at all exertional levels." T at 97. The ALJ referenced SSR 85-15, which provides, "A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15, 1985 WL 56857, at *8 (SSA 1985). In light of the foregoing, the ALJ committed no error by not consulting a vocational expert. Accordingly the matter in this regard is affirmed.[15]

**WHEREFORE**, for the reasons set forth above, it is hereby

---

[15] Plaintiff also summarily asserts that the ALJ failed to consider the effects of her obesity when determining her ability to perform her past relevant work and other work that existed in the national economy. Dkt. No. 17 at 13, 15. Plaintiff again fails to suggest what specific effects the ALJ failed to consider and fails to point out supporting evidence. Although Dr. Emad opined that Plaintiff needed to lose weight, he made no clear finding that her *obesity* caused an effect on her ability to perform her past relevant work or other work. *See* T at 633-34. In light of the foregoing, and the fact that an ALJ is not obligated to single out a claimant's obesity for discussion in all cases, *Cruz*, 2006 WL 1228581, at *9, where, as here, obesity was not identified as a disabling impairment, Plaintiff's claim is unavailing.

**ORDERED**, that the decision of the Commissioner of Social Security is **AFFIRMED**, and the complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: June 25, 2009
       Syracuse, New York

*George H. Lowe*
George H. Lowe
United States Magistrate Judge